UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TARYECHIA RODGERS,

        *Plaintiff*,

  v.

WHITE GLOVE COMMUNITY CARE, INC.,

        *Defendant*.
------------------------------------------------------------------X

Index Nº: 14 Civ. 3032

**COMPLAINT**

**PLAINTIFF HEREBY
DEMANDS A TRIAL BY JURY**

## NATURE OF THE ACTION

1. Plaintiff Taryechia Rodgers, by and through counsel The Harman Firm, PC, respectfully allege as follows.

2. Plaintiff alleges that Defendant White Glove Community Care, Inc. ("White Glove") required Plaintiff to work in an outrageously hostile and abusive environment. Plaintiff, upon refusing to continue to work in the hostile environment, was functionally terminated by Defendant. This action seeks damages for retaliation under the New York City Human Rights Law ("NYCHRL"), N.Y.C. ADMIN. CODE §§ 8-101 - 8-131, and under the Civil Rights Act of 1991, 42 U.S.C.A. § 1981.

3. Plaintiff further alleges that Defendant illegally required Plaintiff to work in an incredibly racist and hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e ("Title VII").

4. Plaintiff further alleges that Defendant has regularly withheld a portion of Plaintiff's wages. This action seeks compensation for all illegally withheld wages under N.Y. LAB. LAW §§ 191, 650 *et seq*.

## JURISDICTION

5. Jurisdiction of this Court is proper under 28 USC § 1331(a) in that claims arise under federal law, specifically the Civil Rights Act of 1991, 42 U.S.C.A. § 1981 and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq*.

6. Jurisdiction is also invoked under 28 U.S.C. § 1367(a) for claims arising under the NYCHRL, based on supplemental jurisdiction over claims that arise from a common nucleus of operative facts, and are so intertwined with other matters pending before the Court as to make exercise of supplemental jurisdiction necessary.

7. An action brought under Title VII "may be brought . . . in the judicial district in which the aggrieved person would have worked but for the . . . unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3).

8. Finally, Ms. Rodgers filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").[1]  On or about May 22, 2014, it issued a Notice of Right to Sue, which states that her "lawsuit under Title VII . . . must be filed in . . . federal . . . court" within ninety (90) days. *See* Ex. A at 1.

## PARTIES

9. Plaintiff Taryechia Rodgers was at all relevant times an adult individual, residing in the State of New York, County of Richmond, 93 Harrison Street, Staten Island, New York, 10304.

10. Defendant White Glove was at all relevant times a home health care agency, which, upon information and belief, has headquarters in the State of New York, County of Kings, 85 Bartlett Street, Brooklyn, New York, 11206.

---

[1]  EEOC Charge Nº 520-2014-00002.  *See* Ex. A.

11. Upon information and belief, Defendant acted intentionally and maliciously, and each is an "Employer" pursuant to NY CLS Exec § 292, N.Y.C. Admin. Code §§ 8-102, and N.Y. Lab. Law §§ 2(6), 190(3).

## JURY TRIAL

12. Plaintiff respectfully requests a trial before a jury.

## FACTUAL ALLEGATIONS

13. Plaintiff was hired by Defendant as a Home Health Aide in 2012, and was compensated approximately eleven dollars ($11) per hour.

14. From her date of hire until March 6, 2013, Plaintiff worked an average of thirty six (36) hours a week.

15. On March 6, 2013, Defendant dispatched Plaintiff to the home of Vincent Scamardella. Plaintiff had not previously served as a Home Health Aide to Mr. Scamardella.

16. Mr. Scamardella was extremely abusive towards Plaintiff. Mr. Scamardella called Plaintiff, "colored," "nigger," and "an uneducated southern bible pusher." When Plaintiff took offense, Mr. Scamardella told her she was just "a sensitive woman."

17. Mr. Scamardella repeatedly told Plaintiff that African-Americans were "ugly and stupid."

18. Mr. Scamardella is significantly larger than Plaintiff, and Plaintiff felt that Mr. Scamardella posed a physical threat to her.

19. Nonetheless, Plaintiff managed to complete her shift with Mr. Scamardella.

20. The next day, March 7, 2013, Defendant requested that the Plaintiff again serve as a Home Health Aide to Mr. Scamardella.

21. Plaintiff informed Defendant of Mr. Scamardella's egregious conduct and requested that Defendant assign her to a different client.

22. Outrageously, Defendant insisted that Plaintiff return to Mr. Scamardella, stating that he was a "special case."

23. Plaintiff complied with Defendant's orders and went back to Mr. Scamardella's residence.

24. Upon Plaintiff's arrival, Mr. Scamardella resumed his abusive and extremely offensive racist conduct.

25. Plaintiff, subjected again to a hostile work environment, departed Mr. Scamardella's home and called Defendant. Plaintiff informed Defendant that she would not continue to work with Mr. Scamardella.

26. Defendant instructed Plaintiff to wait at Mr. Scamardella's residence, and told her that Defendant would call Mr. Scamardella to try and resolve the situation.

27. Bizarrely, Defendant then called Plaintiff back, claiming that Mr. Scamardella had "apologized," and wanted Plaintiff to return. Plaintiff refused to go back inside Mr. Scamardella's home, and ceased work for the day.

28. In retaliation for Plaintiff's complaints of race discrimination, Defendant refused to assign any work to Plaintiff, despite the fact that she had been a highly successful Aide prior to her encounter with Mr. Scamardella.

29. Plaintiff repeatedly requested assignments from Defendant over the next several days and weeks; eventually Defendant falsely claimed that Plaintiff's medical certification had expired.

30. Plaintiff provided Defendant with her medical documentation on April 8, 2013, documentation Defendant already possessed.

31. Even upon receipt of the requested documentation, Defendant continued to refuse to assign work to Plaintiff. Plaintiff then filed for unemployment. Defendant contested the unemployment claim, asserting that Plaintiff had quit.

32. The Department of Labor found that Plaintiff had not quit, but had been discharged.

33. Plaintiff sought work with other home health care agencies, but was not hired. Plaintiff believes that Defendant sabotaged any effort by Plaintiff to find new employment.

34. Plaintiff then filed a claim against Defendant at the Equal Employment Opportunity Commission ("EEOC").

35. Defendant, faced with the prospect of defeat in another administrative hearing, resumed offering Plaintiff work on June 4 in a failed effort to insulate itself from liability for blatant retaliation and hostile work environment claims.

36. With no other employment opportunities, Plaintiff had no choice but to return to work for Defendant, which she did in June of 2013.

37. Prior to the incident of March 6, Plaintiff had worked two (2) shifts per day, with each shift lasting approximately four (4) hours. Plaintiff worked, on average, approximately thirty five (35) hours a week. Since returning to work, Plaintiff has typically been assinged only one (1) shift a day, severely reducing Plaintiff's workload.

38. Defendant, in addition to reducing Plaintiff's hours, began withholding Plaintiff's wages when she returned to work, all in retaliation for raising her rights under anti-discrimination laws.

39. Plaintiff would submit a weekly timesheet, signed by her clients, and Defendant would pay Plaintiff for only a fraction of her hours worked.

40. Defendant regularly underpaid Plaintiff, and continues to do so even after Plaintiff brought the underpayments to Defendant's attention.

41. Defendant would reluctantly pay Plaintiff the amount shortchanged if she persistently demanded it, however Plaintiff does not believe that all shortchanged hours have been repaid.

42. Additionally, Defendant delays payment of wages due for an unreasonably long period of time. Plaintiff has had to wait over a month to receive payment for hours worked.

43. Defendant is required by law to provide personal protective equipment to its home health aides.

44. Plaintiff works with clients with a variety of infectious diseases, including HIV.

45. Defendant has never once provided Plaintiff with personal protective equipment. New York Health Law requires protective equipment to be used for the safety of both the caregiver and the patient.

46. Defendant has never once reimbursed Plaintiff for her expenses in purchasing required personal protective equipment.

## FIRST CLAIM
### Illegal Retaliation under the Civil Rights Act of 1991, 42 U.S.C.A. § 1981

47. Plaintiff hereby realleges and incorporates every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.


48. Plaintiff, while working for Defendant, was subjected to intense discrimination based on her race. Plaintiff properly reported the extremely hostile and discriminatory working conditions to Defendant. Defendant ordered Plaintiff to continue working amid intolerable racism, and when Plaintiff refused, Defendant retaliated against her by denying her work for over three (3) months.

49. Defendant continues to retaliate against Plaintiff by assigning her less work than she received prior to the incident.

50. Under 42 U.S.C.A. § 1981, retaliation against an employee for complaining of discriminatory conduct is illegal.

51. As a result of Defendant's illegal and ongoing retaliation, Plaintiff suffered damages for past and future earnings. Plaintiff seeks damages for lost earnings, as well as for attorney's fees, costs, and emotional injuries in an amount to be determined at trial.

**SECOND CLAIM**
**Illegal Retaliation under New York City Human Rights Law § 8-107**

52. Plaintiff hereby realleges and incorporates every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

53. Plaintiff, while working for Defendant, was subjected to intense discrimination based on her race. Plaintiff properly reported the extremely hostile and discriminatory working conditions to Defendant. Defendant ordered Plaintiff to continue working amid intolerable racism, and when Plaintiff refused, Defendant retaliated against her by denying her work for over three (3) months.

54. Defendant continues to retaliate against Plaintiff by assigning her less work than she received prior to the incident.

55. Under NYCHRL § 8-107, retaliation against an employee for complaining of discriminatory conduct is illegal.

56. As a result of Defendant's illegal and ongoing retaliation, Plaintiff suffered damages for past and future earnings. Plaintiff seeks damages for lost earnings, as well as for attorney's fees, costs, and emotional injuries in an amount to be determined at trial.

## THIRD CLAIM
### Race Discrimination under Title VII
### (Hostile Work Environment)

57. Plaintiff hereby realleges and incorporates every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

58. Plaintiff had reported to Defendant egregious racial abuse in her work environment.

59. Defendant, in insisting Plaintiff return to work, knowingly submitted Plaintiff to an extraordinarily hostile work environment, in violation of Title VII.

60. Plaintiff filed a complaint with the EEOC, and the EEOC has given her a Right to Sue letter.

61. Plaintiff suffered damages for past and future earnings, attorneys' fees, and emotional injuries in an amount to be determined at trial.

## FOURTH CLAIM
### Race Discrimination Under New York City Human Rights Law § 8-107
### (Hostile Work Environment)

62. Plaintiff hereby realleges and incorporates every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

63. Defendant required Plaintiff work in a virulently racist environment, where she the subject of racial slurs and abuse. Plaintiff complained to Defendant about the intensely hostile environment, and Defendant insisted she return.

64. Therefore, Defendant submitted Plaintiff to a hostile work environment, in violation of the NYCHRL.

65. As a result, Plaintiff suffered damages for past and future earnings, attorneys' fees, and emotional injuries in an amount to be determined at trial.

## FIFTH CLAIM
### Illegal Withholding of Wages Under N.Y. Lab. Law § 191

66. Plaintiff hereby realleges and incorporates every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

67. Since Plaintiff returned to work for Defendant, Defendant has consistently failed to pay Plaintiff the full amount of her wages due. Defendant also fails to pay Plaintiff promptly what wages it ultimately decides to pay. Both of these practices are in violation of N.Y. LAB. LAW §§ 191 *et seq*.

68. Plaintiff seeks damages for all illegally withheld wages, attorney's fees, and costs.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

i. On the First Claim, actual damages to be determined at trial, but in no event less than three hundred thousand dollars ($300,000);

ii. On the Second Claim, actual damages to be determined at trial, but in no event less than three hundred thousand dollars ($300,000);

iii. On the Third Claim, actual damages to be determined at trial, but in no event less than three hundred thousand dollars ($300,000);

iv. On the Fourth Claim, actual damages to be determined at trial, but in no event less than three hundred thousand dollars ($300,000);

v. On the Fifth Claim, actual damages to be determined at trial, but in no event less than five thousand dollars ($5,000);

vi. Punitive damages;

vii. Attorneys' fees, disbursements and other costs; and,

viii. Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
May 14, 2014

       s/   Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
THE HARMAN FIRM, PC
*Attorneys for Plaintiff*
1776 Broadway, Suite 2030
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com